R. W. WINSTEAD v. HEARNE BROTHERS & CO., A CORPORATION.

(Filed 26 May, 1917.)

**1. Appeal and Error—Further Findings—Reference—Additional Evidence.**

Where the Supreme Court orders the Superior Court judge to make and certify additional findings in passing upon the report of a referee, he is not required to reopen the case for the consideration of additional evidence, but to make his findings from the evidence already taken, when no exception is taken thereto and it is sufficiently comprehensive.

**2. Corporations—Receivers—Dividends—Statutes.**

*Semble,* Laws 1915, ch. 137, amending Laws 1913, ch. 145, by the inconsistency of the provisions repeals the former law as to grounds for dissolution of a corporation not paying dividends for six years, upon motion of one owning one-fifth or more of its capital stock, so as to make the dissolution of the corporation depend upon the petition of 10 per cent of the stockholders, when the dividend has not been declared on its common stock for ten years.

**3. Same—Remedial Statutes—Majority Stock—Abuse of Power.**

Chapter 137, Laws 1913, as to a receivership of a corporation, upon petition of a one-fifth interest in its shares, which has not paid a dividend in six years, is a remedial statute, and intended to remedy an abuse of power by the majority shareholders by a suspension of dividends, a method at times resorted to to freeze out minority holders or depress the market value of the shares.

**4. Same—Consent—Estoppel.**

Where a stockholder in a corporation has actively participated in its management and consented to the increase in its capital stock from the earnings of a profitable concern, which has proven decidedly advantageous, he is thereafter estopped to assert the right given a holder of a certain amount of the stock to throw the corporation into a receiver's hands for nonpayment of dividends within a certain period.

CIVIL ACTION, tried March Term, 1916, of EDGECOMBE, before *Allen, J.,* upon exceptions to report of referee. From the judgment of the court defendant appealed.

*G. M. T. Fountain & Son for plaintiff.*
*F. S. Spruill, T. T. Thorne for defendant.*

BROWN, J. The plaintiff is a stockholder in defendant corporation and seeks to have the corporation dissolved and a receiver appointed, not upon the ground of insolvency, but because it has not declared a dividend within six years preceding this action. Pub. Laws 1913, chap. 147.

The cause was referred to a referee, Mr. James Pender, who made a lucid and comprehensive report, to which no exceptions were filed.

Upon the coming in of the report the judge, without in any wise disturbing the referee's findings, held that "Regardless of the various matters·set up by the defendant and the matters and facts appearing in the receiver' report, the plaintiff is entitled to the relief demanded in the complaint." Whereupon the court entered an order dissolving the corporation, etc. From which order defendants appealed.

Upon considering the case this Court, *ex mero motu,* made an order directing the judge holding the courts of Edgecombe County to find certain facts and answer certain questions from the evidence and report to this Court. The judge made the following report:

In compliance with the certificate of the Supreme Court ordering the judge of the Superior Court holding the courts of the district to find and certify to the Supreme Court certain facts in the above case, and propounding certain questions to be answered, in obedience thereto and in response to said questions the court doth certify as follows:

Q. 1. When was the plaintiff elected a director of the corporation, and how long did he continue as such?

A. Plaintiff was elected a director of the corporation upon its organization, and seems, from the minutes, to have been such up to the time of the institution of the action. The plaintiff was also an officer of the corporation, either its general manager and secretary or its vice president, during the entire existence of the corporation up to the bringing of this action. There seems to have been no distinct meeting of the board of directors, but there seems to have been annual meetings of the stockholders. All or most of them were directors, and practically all of the business of the corporation seems to have been transacted at said meetings, except the general management of the business, which was intrusted by the by-laws to the general manager.

Q. 2. Did the plaintiff participate in the active management of the corporation, and if so, how long and to what extent?

A. Up until the year 1907 he seemed to be the active and moving spirit in the corporation, acting at one time as its general manager. After said date he was continuously vice president and seemed to have participated in all of the annual meetings. The records do not disclose that at any of these meetings he ever demanded a dividend to be declared which was not declared.

Q. 3. Did he consent to the use of the profits of the corporation to increase its capital?

A. Yes.

Q. 4. Did he object to the use of the profits of the corporation to increase its capital, and if so, when and under what circumstances?

A. The referee's report and the evidence as taken by the referee shows that he raised no objection whatever to the use of the profits of the corporation to increase its capital, and seemed to be perfectly satisfied with the management of the company until after the sale of the Strickland stock to W. R. Mann.

Q. 5. Did he demand or request the directors to declare a dividend, and if so, when and under what circumstances?

A. The records do not disclose that he ever demanded that a dividend be declared.

Q. 6. Give any other facts showing the connection of the plaintiff with the business of the corporation.

A. This question seems to be answered by the replies to the foregoing questions. Since the institution of this suit a dividend has been declared and the plaintiff has received his dividend upon his stock. This dividend was declared in the year 1914.

The foregoing is respectfully submitted,

H. W. WHEDBEE,
*Judge of the Superior Court.*

NOTATION.—Counsel for the plaintiff asks the court to consider further evidence in respect to the questions asked by the court. The court declined to consider any other evidence, and makes all findings from a careful reading of the testimony taken by the referee and from the report of the referee. The other evidence offered was in the shape of affidavits, which are filed in the court and which the court declined to consider. To the refusal to consider the affidavits filed, plaintiff excepts.

WHEDBEE, *Judge.*

Upon the coming in of the report and findings of his Honor, Judge Whedbee, the plaintiff moves for a *certiorari* directing the judge to certify to us the affidavits and new evidence offered before him, and which he refused to consider.

This motion must be denied. It was not intended by the order hereinbefore mentioned to open up the case for a new trial before the judge or a referee.

The judge acted strictly within the scope of our order in finding the facts from the evidence already taken by the referee. These facts had not been found by the judge who rendered the judgment appealed from, and we deemed them essential to a proper determination of the case.

Coming to consider the appeal of the defendant from the order dissolving it, we find that no exceptions were filed by either party to the referee's findings of fact and that the judge based his judgment upon the facts admitted that no dividend had been declared and paid for more

than six years prior to the commencement of this action, and that during that period the financial condition of the defendant had been very prosperous.

It appears from the record that the defendant corporation was organized on 17 July, 1901, (taking over the business of Hearne Bros. & Co., coffin manufacturers) with a paid-up capital of $4,000; that the incorporators were W. R. Mann, W. T. Hearne, J. O. Hearne, and the plaintiff, and on 8 January, 1904, the Hearnes sold their stock to Mann and Winstead, the plaintiff, and his wife. From this time on Mann and Winstead and Mrs. Winstead were the only stockholders until 1906, when Mann and Winstead each sold to B. A. Strickland three shares, which Strickland kept until 1911, when he sold the six shares to W. R. Mann, since which time W. R. Mann has owned thirty-three shares and R. W. Winstead twenty-six shares and Mrs. Winstead one share, and they are now the only stockholders in said corporation.

On 31 December, 1902, a stock dividend of $2,000 was declared, thereby increasing the capital stock to $6,000, at which it has since remained. On 1 October, 1903, a dividend in cash of $2,000 was declared and paid, another in May, 1906, of 6 per cent, and another in May, 1907, of 17 per cent. Since then no dividend has been declared until 1914, after commencement of this action. The referee finds:

"That the business has been prosperous from the beginning, and increased in volume from year to year, requiring more capital, especially since the additions and improvements mentioned in paragraph 9. The company has never borrowed any money (except $500 and $1,000, many years ago), but has used the profits as a working capital. No assets of the company are employed except in its own business, there being no money loaned out and no outside investments. That the use of the profits as a working capital instead of borrowing money was in good faith and resulted in great prosperity to the company.

"That the company made only a cheap grade of pine coffins up to 1906, when it began manufacture of a higher grade, using hardwoods. This necessitated the investment of several thousand dollars in machinery, the purchase of proper hardware and cloth, and also hardwoods. As a result of the expansion it was required to carry larger stock of material of all kinds. This policy was mutually agreed to by all the stockholders. This expansion was made without borrowing any money, the profits being used for the purpose. As a result of this increase in the plant and improvement in the quality of output, the business continued to grow; if the quality of the output had not been improved the business would have gone down. The plaintiff never objected to this policy, and there was no friction between the parties until 1910 or 1911, when W. R. Mann acquired the Strickland stock."

39—173

The present net worth of the defendant is $40,877.47.

The referee also finds that "Neither of the stockholders nor the directors of this corporation have ever, by any order entered in the minutes, directed to be set aside any part of the surplus to be used as a working capital and not used in paying dividends."

It also appears from the findings reported by Judge Whedbee that plaintiff has been a stockholder, director, and officer of the defendant from its incorporation, and that he has never requested that a dividend be declared other than those declared and paid; that the stockholders and directors were one and the same and that the policy of using the earnings of the corporation to enlarge its business instead of borrowing money was agreed to by plaintiff and all the other stockholders. That in this case it was a wise policy is proven by the result.

The only allegation upon which plaintiff rests his application for a receiver and dissolution of the corporation is that defendant has paid no dividend for six years preceding the application. He does not and cannot claim that it is insolvent, for its capital stock is only $6,000 and its net assets exceed $40,000. This is a most extraordinary showing, considering the fact that in addition to a stock dividend of $2,000 it has paid its stockholders 56 per cent in cash dividends since its organization in 1901.

It is true that the act of 1913, ch. 147, provides that application may be made by stockholders owning one-fifth or more in amount of the paid-up stock of certain corporations for the appointment of a receiver where no dividend has been paid for six years preceding the application. A material amendment was made, however, to this statute by the act of 1915, ch. 137, by adding to section 1 these words: "Or whenever stockholders owning one-tenth or more in amount of the paid-up *common* stock of any such corporation shall apply to the judge of the Superior Court as aforesaid by petition containing a statement that said corporation has paid no dividend on the common stock for ten years preceding said application."

This amendment would appear to be inconsistent with the six-year clause of the original act and to require ten years complete suspension of dividends on the common stock of a corporation before application can be made for a receiver on that ground.

The stock of the defendant is all common stock. It has issued no preferred stock. It paid a dividend of 17 per cent on its stock on 14 May, 1907. It would seem, therefore, that as this dividend was paid in less than ten years before this action was commenced, it cannot be maintained unless upon the ground that the action was commenced

before the enactment of the amendment. But as the point is not made in either brief, and was not argued before us, we will not decide it, but will rest our decision upon another ground.

The act of 1913 is a remedial act and must be so construed. It was intended to remedy an abuse of power by majority stockholders to the detriment of those in the minority. It is entitled "An act for the relief of minority stockholders of certain corporations in certain cases."

Suspension of dividends is a favorite method adopted when it is desired by a majority to freeze out objectionable minority stockholders or to depress the market value of the stock of the corporation.

The act was never intended to take away from the stockholders the right to manage, by unanimous consent, the business in any legitimate manner most conducive to its success.

The plaintiff during the entire life of defendant corporation has been a director and officer as well as stockholder. He consented to the use of the surplus earnings in the enlargement of the business. He has never demanded that a dividend be declared or endeavored to have one declared since May, 1907. During all that time he was actively connected with the management and consented to the financial policy of the corporation which has produced such splendid results.

It is a well settled principle of law that the complaining stockholder must first seek relief through the directorate or controlling authorities of the corporation before he can apply to the courts.

An action to compel the declaration of a dividend cannot be maintained where the stockholder has not applied to the directors, and he must allege that the directors refused to entertain such application. 2 Cook on Corp., sec. 684, p. 2091.

It would be a great wrong to the other stockholders to permit plaintiff to participate actively in all the meetings, to consent to and agree in putting back into the concern its surplus and profits for the purpose of enlarging the company's business without declaring a dividend, and then afterwards ask the interposition of this Court and the dissolution of the corporation for such conduct.

We are of opinion that the plaintiff is estopped by his conduct from asking a dissolution of the corporation upon the grounds set out in the complaint.

The order decreeing a dissolution and appointing a receiver is reversed, and the action is dismissed.

Reversed.