B. P. WAY v. MOREHEAD CITY SEA FOOD COMPANY AND CARTERET ICE, TRANSPORTATION, AND STORAGE COMPANY.

(Filed 11 October, 1922.)

1. Corporations — Purchase—Absorption—Stockholders—Actions—Independent Promise.

Two corporations by proper procedure agreed that the one should purchase the entire assets of the other, giving the stockholders of the selling corporation the right to take for their stock either cash from or stock in the purchasing corporation, at par value, and the purchasing corporation accordingly took over the assets of the selling one, and refused payment in cash to a stockholder in the latter company that he had elected to take, and he, upon the refusal of both corporations, brought action against them for the purchase price, in cash for his shares of stock: *Held*, the transaction between the corporations was for the personal benefit of the plaintiff, and he may maintain his action against the purchaser on its promise to pay, independently of any action of the selling corporation in which he was a shareholder.

2. Same—Consideration.

Where one corporation has absorbed or taken over the entire assets of another corporation, by purchase, under an agreement giving the stockholders in the latter the choice of taking stock in the purchasing corporation or cash for his stock, the transaction affords a consideration for the promise of the purchasing corporation to pay cash to a stockholder in the selling one, who has elected to sell for the cash, and duly notified both companies of his election, and made proper demand for the money, all before this action brought to recover the amount.

APPEAL by defendant ice company from *Cranmer, J.*, at June Term, 1922, of CARTERET.

The defendant, which we will call, for brevity, the ice company, having decided in meetings properly held to enlarge its plant, accepted an offer from its codefendant, the sea food company, to sell to it certain property, it being all the said company's holdings of real estate, on which was located the ice factory, cold-storage packinghouse, sidetracks, and water front, with riparian rights to the same, for the sum of $40,000 cash, with the understanding that the stockholders of the Morehead City

Sea Food Company reserve the right to take stock in the consolidated company, as appears from the record, known as the ice company. And the following resolution was duly passed by said ice company:

"Resolved that in the judgment of this board of directors, the properties offered by the Morehead City Sea Food Company are truly worth the sum of $40,000; and that it is wise and highly advantageous for this company to secure said properties at the price named, and to pay therefor either with cash, or with full paid-up capital stock of this company at par. Resolved further, that the additional increase of $40,000 in the capital stock of this company authorized by the stockholders of this company this date, for the purpose of securing additional properties either by cash from the sale of the said stock, or issuance thereof to the stockholders of said Morehead City Sea Food Company electing to take stock of the ice company, is deemed wise and proper by this board of directors. Resolved further, that the president and secretary be and they are hereby authorized and directed to consummate the purchase of said properties, first having had counsel for this company to pass upon the title thereto, and the deed for the same from said Morehead City Sea Food Company to this company; and when said transfer papers and title are pronounced satisfactory, they are hereby authorized and directed to receive said deed and papers, procure registration thereof, and to pay the consideration therefor, either in cash or fully paid-up stock of this company, as the stockholders respectively of said Morehead City Sea Food Company may elect to receive same. Resolved further, that pending the consummation of the purchase of said properties mentioned, the secretary-treasurer of this company be and he hereby is authorized and directed to pay to the Morehead City Sea Food Company, by proper voucher of this company, the sum of $500 prior to 1 November, 1919, to close the option on said properties, which said $500 shall be received by the purchaser as part of the consideration for said properties, and so receipted."

This action was brought by the plaintiff to recover the cash equivalent of the stock owned and held by him in the sea food company, it being $4,898.90, plaintiff having alleged that he made known to the defendant before this action was commenced, that he elected to take the cash instead of stock, and demanded payment of the same, which reasonable demand was refused by the defendant, and that no part of the said cash, to which he was entitled by virtue of the unanimous agreement of the two corporations, has ever been paid to him, and he therefore demanded judgment for the same.

The defendant "ice company" filed the following demurrer to the complaint:

"The defendant Carteret Ice, Transportation, and Storage Company demurs to the complaint, and for grounds of demurrer, says:

"1. That plaintiff has not the legal capacity to sue in this action, since he sues neither for the alleged corporation in which he claims stock, nor as one for whom the corporation has, upon proper allegation, refused to prosecute.

"2. That there is a misjoinder of parties and of causes of action in the complaint, for that plaintiff seeks to recover for the Morehead City Sea Food Company, to his use, a claim which only may be recovered, if any recovery can be had, by said company, and in the same action seeks to recover of the Morehead City Sea Food Company the par value of his stock in said company.

"3. That the complaint does not state facts sufficient to constitute a cause of action against this defendant.

"4. That the complaint contains a statement only of a defective cause of action, for that it appears that such cause of action, if any exists, is not against this defendant, but lies, if at all, between the plaintiff and Morehead City Sea Food Company."

The court sustained the demurrer of the ice company, and dismissed the action as to it. It is stated in the record that the sea food company also filed a demurrer, which was overruled by the court, and the company permitted to answer over, but there was no appeal by it, nor does its demurrer appear in the record. But this, as we think, is not very important or material.

Judgment was entered in accordance with the rulings of the court, and the ice company appealed.

*C. R. Wheatley and Charles L. Abernethy for plaintiff.*
*Julius F. Duncan for defendant ice company.*

WALKER, J. It appears in the complaint that the plaintiff has demanded the relief to which he alleges that he is entitled from both defendants, and that they have refused the same. The defendant, the ice company, contends that the plaintiff has no right to sue it, but that it must seek its remedy through the sea food company, of which he is a stockholder, and that, at least, he cannot sue this defendant until that remedy has first been exhausted, citing as authority for this position *Merrimon v. Paving Co.,* 142 N. C., 539; *Staton v. R. R.,* 147 N. C., 436; *Victor v. Mills,* 148 N. C., 110; *Lasley v. Mercantile Co.,* 179 N. C., 577. It was said in the case last cited: "It is insisted that plaintiff, a stockholder, cannot maintain the present suit because he has not shown or alleged that he first made application to the directors or management to take action in the matter, citing *Merrimon v. Paving Co.,*

142 N. C., 539, and other cases. The principle approved in these decisions is recognized as to suits concerning corporation management, to collect corporate claims, or, in some way, to enforce or regulate corporate action, but has no application to a suit to dissolve a corporation for nonuser of the powers where, as in this instance, the right to proceed is conferred on the individual stockholder by express provision of the statute, and without regard to the amount of his holdings." And it is similarly said in 10 Cyc., at p. 965: "The distinction between the right of a shareholder to sue or defend for the corporation and his right to sue for the redress of injuries which are personal to himself, whether committed by the corporation or through the malfeasance of its agents, is total and clear. The rule which restrains a shareholder from suing to redress injuries to the corporation does not operate to impose any restraint upon him from suing to redress injuries which are personal to himself or to restrain wrongful acts which are not only wrongs against the corporation, but also violations of duties arising from contracts or otherwise, and owing directly to the injured shareholders." And again, at pp. 965-966: "If the directors are guilty of a breach of trust, injuries to the corporate property or to the rights of the shareholders, or a portion of them, and if the corporation refuses to institute the proper proceedings to restrain or redress such injury, one or more of the shareholders may do it in their individual names. This rule is founded in part upon the consideration that the directors are trustees for the shareholders, and that in any action to redress breaches of trust on the part of the directors as toward the shareholders, the shareholders are the real parties in interest."

It is said in *Heggie v. B. & L. Assn.,* 107 N. C., at p. 590: "The corporation represents the share-owners in defending an action involving the rights and obligations of the corporation, and, in the absence of fraud or collusion, binds them, and individual stockholders cannot assert or defend the rights of the corporation," citing *Moore v. Mining Co.,* 104 N. C., 534; Cook on Stock and Stockholders, sec. 678; *Foundry Co. v. Killian,* 99 N. C., 501.

So that the principle, upon which reliance is placed to defeat this action by the plaintiff, has no real application to the case, but the peculiar facts of this case make the position more clearly untenable, for here the right to have cash paid to him, for his stock in the Way Food Company is plainly and unequivocally given to the plaintiff by the very terms of the contract between the two companies, concurred in unanimously by the stockholders. The fair interpretation of that contract is that each stockholder of the Way Food Company may elect to take either cash or stock in the ice company for the stock held by him in the sea food company. It seems from the allegations of the complaint,

admitted in law by the demurrer, that before this action was brought the plaintiff notified the defendants that he would elect to take cash for his stock, and demanded payment of it, the other stockholders, except one B. C. Way, having elected to take stock in the ice company in exchange for the stock held and owned by them in the sea food company. It appears further that the latter company has sold or disposed of all its property, and has further been taken over and absorbed by the ice company. The terms of the agreement between the two companies and their stockholders makes the cash, which each stockholder of the sea food company elects to take for his stock in that company, directly payable to him and not to his company, and this clearly gives him the right to sue for the same if it is not paid to him on proper demand for the same. There is here not only an express promise by the ice company to pay the money for the stock at par value, that is, so many dollars for each share, but the ice company has received the property and assets of the sea food company as a consideration for the promise so made by it. It cannot hold the property and repudiate its promise, but the law will exact full performance of the same. The case, in principle if not in form, is not unlike that of *Friedenwald v. Tobacco Works,* 117 N. C., 544, the facts of the two cases being substantially alike.

The court erred in sustaining the demurrer of the ice company, which will be overruled, and both defendants will be allowed to answer over.

It may be that when the answers come in the facts may appear differently, and require different consideration and treatment, but we cannot now anticipate how this will be.

Error.