CHARLES E. KISTLER ET AL. v. THE CALDWELL COTTON MILLS COMPANY.

(Filed 24 January, 1934.)

1. Corporations K a—Holders of one-fifth of total capital stock may sue for dissolution for failure to earn dividends for three years.

Where a corporation has failed to earn four per cent on its total paid-in capital stock, it is not required that stockholders suing for its dissolution under C. S., 1186, should own one-fifth of its common stock in order to maintain the action, it being sufficient if they own common and preferred stock constituting one-fifth or more of the total paid-in capital stock of the corporation, common and preferred, and that they have owned such stock for a period of two years next preceding the institution of the action, and their right to maintain the action is not affected by the fact that holders of preferred stock are given no vote in the management of the corporation, the preferred stock being a part of the capital stock of the corporation, C. S., 1156, entitling the holders to all rights of stockholders subject to the terms and conditions on which their stock was issued.

2. Corporations K b—Whether earned dividends are sufficient to resist dissolution will be determined in relation to total capital stock.

The fact that a corporation has earned net income sufficient to pay in good faith dividends on its preferred stock within three years prior to the institution of an action for its dissolution under C. S., 1186, is not sufficient to resist the action for dissolution if the earned dividends do not amount to four per cent on its total capital stock, preferred and common.

3. Constitutional Law E a—

The constitutionality of C. S., 1186, providing for the dissolution of corporations in certain instances, cannot be successfully assailed in an action thereunder to dissolve a corporation organized subsequent to its enactment.

4. Corporations K b—Where petition meets all requirements of C. S., 1186, it is not error for court to order corporation to file inventories.

Where the petition in an action for the dissolution of a corporation meets all requirements of C. S., 1186, it is not error for the court to

require the defendant corporation to file inventories as provided by statute, and whether the court will order dissolution upon the final hearing is to be determined in its discretion according to whether, from all the facts shown, the failure of the corporation to earn the required dividends was due to temporary conditions or to its management.

CLARKSON, J., dissenting.

APPEAL by defendant from *Finley, J.*, at Chambers, in Morganton, N. C., on 22 June, 1933. From CALDWELL. Affirmed.

This is an action for the dissolution of the defendant corporation, and for the distribution of its net assets among its stockholders, in accordance with their respective rights and equities.

The action was begun in the Superior Court of Caldwell County on 1 June, 1933. It was heard by the judge holding the courts of the judicial district in which Caldwell County is situate, at chambers, (1) on the demurrer of the defendant to the complaint; and (2) on the motion of the plaintiffs for an order requiring the defendant to file inventories as provided by C. S., 1186.

The demurrer of the defendant was overruled, and the motion of the plaintiff was allowed. The defendant appealed to the Supreme Court.

*Mull & Patton, S. J. Ervin and S. J. Ervin, Jr., for plaintiffs.*
*Mark Squires, Newland & Townsend and L. H. Wall for defendant.*

CONNOR, J. This action was instituted under the provisions of C. S., 1186, which is as follows:

"C. S., 1186. When stockholders owning one-fifth or more in amount of the paid-up stock of any corporation organized under the laws of and doing business in this State, except corporations organized for religious, charitable, fraternal, and educational purposes, and except banking and public-service corporations, apply in term or vacation to the judge of the Superior Court holding the courts for the county in which the principal place of business of the corporation is situated, by petition containing a statement that for three years next preceding the filing of the petition, which time shall begin to run from three years after it has begun business, the net earnings of the corporation have not been sufficient to pay in good faith an annual dividend of four per cent upon the paid stock of the corporation, over and above the salaries and expenses authorized by its by-laws and regulations, or that the corporation has paid no dividend for six years preceding said application; or whenever stockholders owning one-tenth or more in amount of the paid-up common stock of any such corporation apply to the judge of the Superior Court as aforesaid by petition containing a statement that the corporation has paid no dividend on the common stock for ten years preceding

said application, and that they desire a dissolution of the corporation, the judge shall make an order requiring the officers of the corporation to file in court, within a reasonable time, inventories showing all the real and personal estate of the corporation, a true account of its capital stock, the names of the stockholders, their residences, the number of shares belonging to each, the amount paid in upon said shares and the amount still due thereon, and a statement of all encumbrances on the property of the corporation, and all its contracts which have not been fully satisfied and canceled, specifying the place and residence of each creditor, the sum owing to each, the nature of the debt or demand, and the consideration therefor, and the books and papers of the corporation. Upon the filing of the inventories, accounts and statements, the court shall enter an order requiring all persons interested in the corporation to appear before a referee to be appointed by the court, at a time and place named in the order, service of which may be made by publication for such time as may be deemed proper by the court, and show cause why the corporation should, not be dissolved. If it appears to the court that the statements contained in the petition are true, the court may adjudge a dissolution of the corporation and shall appoint one or more receivers, who shall have all powers of receivers conferred by this chapter for the winding up the affairs and distribution of the assets of the corporation. If it appears to the court that the corporation is insolvent or in imminent danger of insolvency, the court may appoint a temporary receiver of the corporation pending dissolution. No suit shall be brought for the dissolution of a corporation under the provisions of this section until each and all of the petitioners have owned their stock for the term of two years prior to the institution of the action; nor shall any suit be brought for the period of three years after a final judgment upon a prior petition as herein provided."

The defendant in this action, the Caldwell Cotton Mills Company, is a corporation organized under the laws of this State. The said corporation is now, and has been continuously since its organization in 1923, engaged in the business of operating a cotton mill, and of manufacturing cotton goods, in the town of Lenoir, Caldwell County, North Carolina. It has a paid-up capital stock of $349,500, divided into 2,495 shares of common stock, and 1,000 shares of preferred stock, each of the par value of $100.00. The holders of its preferred stock are entitled to receive, when and as the same are declared from the surplus or net profits of said corporation, dividends at the rate of seven per cent per annum, payable quarterly on the first days of February, May, August and November of each and every year. The dividends on its preferred stock are cumulative, and are payable before any dividends are payable on its common stock. Upon the dissolution of said corpora-

tion, whether voluntary or involuntary, and the liquidation of its assets, the holders of its preferred stock are entitled to be paid in full the par value of their stock, together with amounts due as dividends, before any amount shall be paid out of the assets of the corporation to the holders of its common stock. The holders of preferred stock of said corporation are not entitled to voting powers or privileges.

The plaintiffs are now and have been for more than two years prior to the commencement of this action owners and holders of 200 shares of the common, and of 690 shares of the preferred stock of said corporation. For a period of three years next preceding the commencement of this action, the net earnings of the defendant corporation have not been sufficient to pay in good faith an annual dividend of four per cent upon its paid-up capital stock. No action has heretofore been brought under the provisions of C. S., 1186, for the dissolution of said corporation. Dividends have been paid regularly on the preferred stock of said corporation from the date of its organization until 1 February, 1932. No dividend has been paid on said stock since said date.

The plaintiffs are now and have been for more than two years prior to the commencement of this action, the owners and holders of more than one-fifth of the paid-up capital stock of the defendant corporation. They own 200 shares of the common, and 690 shares of the preferred stock of said corporation. The total number of shares of said capital stock, both common and preferred, is 3,495. The contention of the defendant that plaintiffs cannot maintain this action under the provisions of C. S., 1186, because they do not own as much as one-fifth of the common stock of the defendant cannot be sustained. No distinction is made in the statute between holders of the common and holders of the preferred stock of a corporation, when its dissolution is sought under the provisions of the statute, on the ground that the net earnings of the corporation for a period of three years next preceding the commencement of the action for that purpose have not been sufficient to pay in good faith an annual dividend of four per cent upon the paid-up capital stock of the corporation. In such case, it is immaterial that the net earnings of the corporation for the said period have been sufficient to pay dividends on its preferred stock, and that such dividends have been paid, unless the total amount of such dividends equals four per cent per annum of the total capital stock, both common and preferred, of the corporation. It is also immaterial that the holders of the preferred stock have no voting powers or privileges, as in the instant case. The statute cannot and ought not to be so construed as to deprive preferred stockholders of a corporation organized under the laws of and doing business in this State, of its protection, when such corporation for any reason, under the management of officers and directors, who were

elected or appointed by the holders of its common stock, for a period of three successive years, has failed to earn a profit sufficient for the payment of a dividend of at least four per cent per annum on its total paid-up capital stock. The language of the statute does not justify such construction. The holders of preferred stock of a corporation are not creditors and have no rights as such. *Power Co. v. Mill Co.,* 154 N. C., 76, 69 S. E., 747. They are, however, stockholders of the corporation, and subject to the terms and conditions on which their stock was issued, have all the rights of stockholders, 14 C. J., 416. The preferred stock forms a part of the capital stock of the corporation. C. S., 1156.

The further contention of the defendant that C. S., 1186, is void because its enactment by the General Assembly was in violation of provisions of the Constitution of the United States and of the State of North Carolina, is likewise untenable. The validity of the statute has been recognized by this Court in *Lasley v. Mercantile Co.,* 179 N. C., 575, 103 S. E., 213, and in *Winstead v. Hearne,* 173 N. C., 606, 92 S. E., 613. The statute was enacted by the General Assembly of this State in 1913, and was amended in 1915. It was in force at the date of the organization of the defendant corporation, and of the creation of its capital stock.

There was no error in the refusal of the judge to sustain the defendant's demurrer to the complaint.

Nor is there error in the order requiring the defendant to file inventories as provided by C. S., 1186. When the inventories have been filed and the referee, to be appointed by the court, has filed his report, the judge may in his sound judicial discretion, order a dissolution of the defendant corporation, and the distribution of its net assets among its stockholders, in accordance with their respective rights and equities, as provided by the statute. If it shall appear to the judge from all the facts shown by the record at the final hearing that the failure of the defendant corporation to earn a sufficient profit for the payment of an annual dividend on its paid-up capital stock of four per cent, during the past three years, was due to temporary business conditions, and not to the management of its affairs by its officers and directors, and that such failure does not justify a reasonable apprehension that the corporation is in danger of becoming insolvent, the judge may, in the exercise of his discretion, and doubtless will, decline to adjudge the dissolution of the corporation.

The orders overruling the defendant's demurrer to the complaint and requiring the defendant to file the inventories as provided by C. S., 1186, are

Affirmed.

CLARKSON, J., dissenting: This is an action for the dissolution of the defendant corporation, and for the distribution of its net assets among its stockholders, brought by certain owners of preferred and common stock. It is well settled that the right to exist as a corporation is derived from the State and that in the absence of statutory provision to the contrary, only the State which created the corporation can sue to dissolve it. Fletcher, Cyclopedia of the Law of Private Corporations (per. ed.), Vol. 16, sec. 8077, p. 858; *Bass v. Navigation Co.*, 111 N. C., 439; *Torrence v. Charlotte*, 163 N. C., 562. See *Lesley v. Mercantile Co.*, 179 N. C., 575; *S. c.*, 578; C. S., 1182, *et seq.* The Legislature has power to provide, by statute, for the dissolution of a corporation at the suit of an individual, and this action was instituted under the provisions of C. S., 1186.

It may be stated that equity, independently of statute, has no jurisdiction to decree the dissolution of a corporation. The only jurisdiction that a court can have to decree a dissolution, as in the instant case, must be derived from the statute under which the action for dissolution was brought. The pertinent provisions specified in the present statute require that stockholders must (a) own one-fifth or more in paid-up stock, and (b) these stockholders must show that for three years next preceding the filing of the petition the net earnings of the corporation have not been sufficient to pay in good faith an annual dividend of four per cent upon the paid stock of the corporation. It is alleged that the plaintiffs in the present action are now, and have been for more than two years prior to the commencement of the present action, owners of 200 shares of the common, and 690 shares of the preferred stock of said corporation. For three years next preceding the commencement of this action, the net earnings of the defendant corporation have not been sufficient to pay in good faith an annual dividend of four per cent upon its paid-up common capital stock, *but dividends of seven per cent have been paid regularly on the preferred stock of said corporation from the date of its organization until 1 February, 1932.*

The defendant, the Caldwell Cotton Mills Company, had paid-up capital stock of $349,500, divided into 2,495 shares of common stock, and 1,000 shares of preferred stock, making a total of 3,495 shares, each of the par value of $100.00. Unless, under the statute, the holders of preferred stock are entitled to join with holders of common stock, the plaintiffs have no right to bring this action for dissolution of the corporation, for they do not hold one-fifth of the common stock. It is their contention that they have a right not only to tack their preferred stock onto their common stock but also to pool dividends on the preferred stock with failure to pay dividends on common stock, so as to bring their action within the requirements of the statute that "the net earnings of

the corporation have not been sufficient to pay in good faith an annual dividend of four per cent upon the paid stock of the corporation."

The holders of the preferred stock, under the provisions of their contract with said corporation, as set forth in the certificate of preferred stock, are entitled to receive when as declared from the surplus or net profits of the company, dividends at the rate of seven per centum per annum, payable quarterly on the first days of February, May, August and November of each and every year, and the dividends on the preferred stock are cumulative, and are payable before any dividends on the common stock. Upon dissolution of the corporation, the holders of the preferred stock are entitled to be paid in full both the amount of their shares and the unpaid dividends accrued thereon, before any amount shall be paid to the holders of the common stock. The holders of the preferred stock are not entitled to voting powers or privileges.

It is alleged in the complaint: "That the contract between said corporation and the owners and holders of preferred stock therein as set forth in the certificate of preferred stock created and issued by the defendant is, in part, as follows: . . . The holders of the preferred *stock of this company shall not be entitled to voting powers or privileges.*" (Italics mine.) For the purpose of a demurrer, the above facts are admitted. The holders of preferred stock of a corporation are not creditors. *Power Co. v. Mill Co.*, 154 N. C., 76; *Cotton Mills v. Bank*, 185 N. C., 7; *Ellington v. Supply Co.*, 196 N. C., 784.

The difference between preferred stockholders and common stockholders is that the former are entitled to a certain preference—in the instant case to seven per cent cumulative dividends payable before any dividends on the common stock. This is a square-cut distinction between the two classes of stockholders, as long as the dividends on the preferred stock continue to be paid, for it is provided that the preferred stockholders have no voting powers or privileges. Even if the dividends are not paid, they are cumulative, and the preferred stockholder is still in a different class from the common stockholders, not only because of a lack of voting power but also because of still having a preferred claim over common stockholders for unpaid dividends.

While it is apparent that there may be conflicting interests between the holders of preferred stock and the holders of common stock, under the conditions and circumstances of the instant case, the preferred stockholders being interested in the continuance of the payment of their dividends while the common stockholders may be getting nothing, the statute provides the holders of common stock a remedy. One-fifth of the holders of the common stock may bring an action for dissolution. That this was the intention of the Legislature is indicated by the fact that a subsequent amendment (Public Laws, 1915, chap. 137) to the original

statute (Public Laws, 1913, chap. 147) provides for the insertion of a phrase "or whenever stockholders owning one-tenth or more in amount of the paid-up *common* stock of such corporation," etc. It was the understanding of the 1915 Legislature that such was the intention of the 1913 Legislature.

This action was instituted under C. S., 1186. The contract under which the holders of preferred stock bought their stock from the corporation specifically provided that they were to have no voting powers or privileges. Their remedy for failure to pay dividends would not arise under this statute, but even if they were entitled to bring such an action they cannot qualify under its provisions, for they have received dividends within three years. "Defendant since its organization has paid dividends on its preferred stock according to the amount mentioned therein from the date of its issuance up to and including the dividend installment falling due 1 February, 1932, after which time it has paid no dividend on said preferred stock. This stipulation may be considered by the court on the motion to dismiss. This stipulation is not to be considered as an admission that the defendant earned any money wherewith to pay said dividends."

It cannot be said that the interests of the two classes of stockholders may be merged by pooling the two classes of stock, for their interests are not the same. The holders of preferred stock are concerned with a continuance of their preferred dividends of seven per cent, the interest of the holders of common stock in conserving the assets of the corporation with a view to increased dividends later. The holders of the common. stock own the assets of the corporation after the holders of the preferred stock are paid.

Under the terms of the contract contained in the certificate of preferred stock, and under the provisions of C. S., 1186, the demurrer of the defendant should have been sustained, and the action of the lower court should be reversed.